**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT LINDE, | ) | CASE NO. 5:14-CV-2799 |
| | ) | |
| Petitioner, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| NEIL TURNER, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This 28 U.S.C. § 2254 petition is before the magistrate judge pursuant to Local Rule 72.2(b)(2).  Before the court is the petition of Robert Linde ("Linde" or "Petitioner"), for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  Petitioner is in the custody of the Ohio Department of Rehabilitation and Correction pursuant to journal entry of sentence in the case of *State of Ohio vs. Linde*, Case No. CR-2011-06-1461 (Summit County Dec. 16, 2011).  (Doc. No. 5-17 at Ex. 17.)  For the following reasons, the magistrate judge recommends that the petition be DISMISSED with prejudice.

## I.  Introduction

The state appellate court that affirmed Petitioner's sentences on direct appeal of

his resentencing noted the following facts:

> {¶ 15} Both Linde and Santamaria struggled with drug dependencies and
> believed that the victim, Nemeth, had a large amount of cash in his home.
> The two "cas [ed]" the house and eventually approached it armed with
> masks, hoods, gloves, a police scanner, a knife, and zip ties. Nemeth saw
> the men coming and called 911. He then hid until the police arrived, per
> the 911 dispatcher's instructions. Meanwhile, Linde and Santamaria
> knocked on Nemeth's door and, after no one answered, broke it down.
> They were inside the home from the point in time that they broke down the
> door until the police arrived. When Nemeth saw a cruiser appear at the
> front of the house, he emerged from his hiding place. Linde and
> Santamaria then attacked Nemeth, wrestled him to the ground, and
> threatened to cut him with their knife unless he kept quiet. The police
> stopped the attack as it was occurring. As a result of the attack, Nemeth
> suffered a split lip, bloody nose, and a hematoma.

*State v. Linde*, No. 26714, 2013-Ohio-3503, 2013 WL 4107888, at *3 (Ohio Ct. App.

Aug. 14, 2013) (footnote omitted).

## II.  State Court Proceedings

**A.      Indictment and Guilty Plea**

In June 2011, the State issued an indictment charging Petitioner with one count

each of aggravated robbery (Count One), aggravated burglary (Count Two), and

possessing criminal tools (Count Three).  (Doc. No. 5-3 at Ex. 3.)

In October 2011, Linde retracted his plea of not guilty and pled guilty to the

aggravated robbery and aggravated burglary offenses.  The trial court, upon the State's

motion, dismissed the charge of possessing criminal tools.  (Doc. Nos. 5-4, 5-5, 5-6 at

Exs. 4, 5, 6.)  The following month, the court conducted a sentencing hearing, at which

the parties and the victim testified.   (Doc. No. 5-8 at Ex. 8.)  The court sentenced Linde

2

to a total of fifteen years in prison, including consecutive sentences of eight years for

aggravated robbery and seven years for aggravated burglary, and five years of

postrelease control.  (Doc. No. 5-7 at Ex. 7.)

**B.    Direct Appeal**

Petitioner filed a timely notice of appeal.  (Doc. No. 5-11 at Ex. 11.)  Represented

by new counsel, Linde asserted the following assignments of error:

> 1.    The trial court erred in imposing consecutive
>        sentences since HB 86 enacted R.C. 2929.41 which
>        permits consecutive sentences only in limited
>        situations.
>
> 2.    The trial court erred as a matter of law, and
>        committed plain error, when it did not hold a hearing
>        to determine the applicability of the allied offense
>        statute requiring reversal of the judgment of
>        conviction and remand for further proceedings[.]
>
> 3.    The trial court erred when it sentenced Appellant
>        without considering the consistency and
>        proportionality of his sentence to similarly situated first
>        time offenders who are contrite, remorseful, and have
>        utilized county jail time for good to wit: engaging in
>        cognitive thinking training and anger management
>        counseling.

(Doc. No. 5-13 at Ex. 13.)  In his appellate brief, Linde raised state law claims and relied

almost exclusively on Ohio law.

In June 2012, the state appellate court reversed the judgment of the trial court

and remanded the case for resentencing.  *State v. Linde*, No. 26209, 2012-Ohio-2885,

2012 WL 2410955, at *2 (Ohio Ct. App. June 27, 2012).  The court relied only on state

law in its decision, ultimately finding that the trial court erred by not holding a hearing to

determine whether Linde's convictions were for allied offenses of similar import

3

pursuant to *State v. Johnson*, 128 Ohio St. 3d 153 (Ohio 2010), which established a new test for allied offenses in Ohio.

## C.    Resentencing

In August 2012, the trial court conducted a hearing and determined that Linde's convictions should not merge under *Johnson.*  (Doc. No. 5-9 at Ex. 9; Doc. No. 5-16 at Ex. 16.)  As the state court of appeals noted on direct appeal of the resentencing, the trial court held that "the offenses were committed separately, such that the aggravated burglary was complete when Linde entered Nemeth's home and the aggravated robbery did not occur until after Nemeth emerged and Linde and Santamaria attacked him with the knife."  *Linde*, 2013 WL 4107888, at *3.  In the alternative, the state appellate court reported, the trial court found that "Linde possessed a separate animus for the two offenses, as he only broke into Nemeth's house for the purpose of stealing money in it and did not decide to attack Nemeth until Linde later discovered that Nemeth was, in fact, at home."  *Id.*

In October 2012, the trial court conducted a second sentencing hearing, at which it heard from both parties.  (Doc. No. 5-10 at Ex. 10.)  The trial court again sentenced Linde to a total of fifteen years in prison, including consecutive sentences of eight years for aggravated robbery and seven years for aggravated burglary, and five years of postrelease control.  (Doc. No. 5-17 at Ex. 17.)  The appellate court explained the trial court's reasoning as follows:

> The [trial] court acknowledged Linde's addiction to drugs, but also stated that Linde "made a terrible, terrible decision" by choosing to commit a crime that violated "the sanctity of [the] home." The court also noted that "things could have gotten a lot, lot worse" had the police not intervened. Additionally, the court ordered and reviewed PSIs prior to both sentencing

4

hearings. It is clear that the trial court relied upon the PSIs in reaching its sentencing decision.

*Linde*, 2013 WL 4107888, at *5.

## D.    Direct Appeal of Resentencing

Petitioner filed a timely notice of appeal.  (Doc. No. 5-18 at Ex. 18.)  Represented again by new counsel, Linde asserted the following assignments of error:

>    1.    The trial court erred in determining that the offenses of aggravated robbery and aggravated burglary were not allied offenses of similar import[.]
>
>    2.    The trial court erred in sentencing the Appellant by imposing more than the minimum sentence and by imposing an improper sentence.

(Doc. No. 5-20 at Ex. 20.)

In August 2013, the state appellate court affirmed the trial court's judgment.

*Linde*, 2013 WL 4107888, at * 7.  (Doc. No. 5-22 at Ex. 22.)

Linde, *pro se*, filed a timely notice of appeal in the Ohio Supreme Court and for the first time explicitly relied upon the federal constitution as a basis for appeal.  (Doc. No. 5-25 at Ex. 25.)  In his memorandum in support of jurisdiction, Linde asserted the following propositions of law:

>    I.    The trial court erred in determining that the offenses of aggravated robbery and aggravated burglary were not allied offenses of similar import denying defendant-appellant his protection against double jeopardy and his rights to due process and equal protection of the law in the Ohio Constitution Art. I, §§ 10, 16, & 2; and the United States Constitution Amendments V & XIV.
>
>    II.    The trial court erred in sentencing the Defendant-Appellant to more than the minimum sentence and by imposing an improper sentence denying Defendant-

5

> Appellant his rights to due process and equal
> protection of the law in the Ohio Constitution Art. I, §§
> 16 & 2; and the United States Constitution
> Amendment XIV.

III.    Defendant-Appellant was denied effective assistance
of appellate counsel in violation of the Ohio
Constitution Art.[] I, [§] 10 and the United States
Constitution Amendment VI by appellate counsel's
failure to raise the plain error of the lack of an ability
to pay restitution hearing as required by R.C.
2929.18, by counsel's failure to preserve pertinent
parts of the trial record and by appellate counsel's
failure to adequately argue the first [two] propositions
of law in the appellate brief.

(Doc. No. 5-26 at Ex. 26.)  In December 2013, the Ohio Supreme Court declined

jurisdiction and dismissed the case.  (Doc. No. 5-27 at Ex. 27.)

### III.  Proceedings in this Court

In December 2014, Linde, *pro se*, filed his § 2254 petition.  (Doc. No. 1.)  He

asserts the following four grounds for relief:

I.    The trial court violated Petitioners [*sic*] Fifth
Amendment [r]ight against double jeopardy when it
did not merge the offenses under allied offenses
under law.

Supporting Facts: At sentenceing [*sic*] the court failed
to merge the offenses charged and after a hearing
under law still erred as these crimes are under the
same animus.  After not finding that these crimes are
allied offenses the court then sentenced the Petitioner
thereby violating his Fifth Amendment [r]ight against
[d]ouble [j]eopardy.

II.    The trial court violated Petitioners [*sic*] Fourteenth
Amendment right of due process of law as it
sentenced him contrary to law and did not apply the
minimum sentence.

Supporting Facts: The trial court sentenced the

6

Petitioner to eight (8) years incarceration for his conviction of [a]ggravated robbery, in the first degree; then sentenced Petitioner to seven (7) years incarceration for his conviction of [a]ggravated burglary, also a first degree felony.  These felonies carry a minimum sentence of three (3) years pursuant to state law.

III.     The trial court violated Petitioners [*sic*] Sixth Amendment and Fourteenth Amendment when it sentenced him to consecutive sentences for his offenses.

Supporting Facts: The Petitioner was sentenced to eight (8) years incarceration for [a]ggravated [r]obbery; and seven (7) years for [a]ggravated burglary and those sentence[s] were r[un] consecutive[ly] after the court made findings but failed to prove these findings to a jury beyond a reasonable doubt.

IV.     Petitioners [*sic*] Sixth Amendment right to effective assistance of both trial and appellate counsel was violated that lead [*sic*] to an improper conviction and improper appeal.

Supporting Facts:  Trial counsel was ineffective as counsel failed to object to the fact that the Petitioner was sentenced contrary to law and rulings of the higher courts.  Appellate counsel was ineffective as counsel failed to properly prosecute Petitioners [*sic*] direct appeals in accordance with court rules and appellate procedures.

(*Id.*)

The State filed an Answer/Return of Writ.  (Doc. No. 5.)  Linde then filed a Traverse.  (Doc. No. 8.)  In June 2015, Linde filed a motion requesting permission to correct his Traverse, which this Court promptly granted.  (Doc. Nos. 9, 10.)  Linde, however, has not filed any pleadings with this Court since that time.

**IV. Procedural and Related Issues**

7

## A.    Jurisdiction

A state prisoner may file a § 2254 petition in "the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him." 28 U.S.C. § 2241(d).  The Court of Common Pleas of Summit County, Ohio sentenced Petitioner.  (Doc. No. 5-17 at Ex. 17.)  Summit County is within this Court's geographic jurisdiction.  *See* 28 U.S.C. § 115(a).  Accordingly, this Court has jurisdiction over Petitioner's § 2254 petition.

## B.    Exhaustion and Procedural Default

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus.  *See* 28 U.S.C. § 2254(b) and (c); *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991).   The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *See Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).  If any state procedures for relief remain available, the petitioner has not exhausted his state remedies, and, generally, a federal court must dismiss his petition.  *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).  Where, however, there are no longer any state court remedies still available to a petitioner with respect to a particular claim, this Court may deem that claim procedurally defaulted.  *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' *Engle v. Isaac*, 456 U.S. 107, 125, n.28 (1982), it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred

8

under [state] law,' *Castille*[, 489 U.S. at 351].").

Generally, a federal court must decline to review "contentions of federal law . . . not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

If the State argues that a petitioner has procedurally defaulted a claim, the Court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction.  . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

9

**1.      Petitioner's First, Second, and Third Grounds for Relief**

In grounds for relief one through three, Linde contests the constitutionality of his sentences.  In ground one, he argues that the trial court violated his right against double jeopardy when it determined that his offenses of aggravated burglary and aggravated robbery were not allied offenses under Ohio law and therefore would not merge for purposes of sentencing.  (Doc. No. 1 at 5.)  In grounds two and three, he claims that the trial court violated his due process, equal protection, and jury trial rights by imposing more than a minimum sentence and consecutive sentences without making the statutorily required findings under Ohio law.  (Doc. No. 1 at 7-8.)

The State does not challenge that Linde raised and exhausted these claims in state courts.  (*See* Doc. No. 5 at 6-8.)  The Court questions this analysis by the State.  It does not appear that Linde raised his challenges to his sentencing on federal constitutional grounds to the state appellate court. (*See* Doc. No. 5-20 at Ex. 20.)  Linde raised state claims pertaining to *allied offenses.*  (*Id.* at 7-8.)  The State contends that because Ohio's allied offenses statute "was adopted to protect double jeopardy rights, Linde's allied offense claim preserves a double jeopardy claim." (Doc. No. 5 at 16.)  But allied offenses under state law and double jeopardy are not the same issue.  Nor did Linde, as the State itself observes (Doc. No. 5 at 26), argue federal constitutional law in any due process, equal protection, or Sixth Amendment analysis pertaining to Ohio's sentencing requirements in his appellate brief.  (*Id.* at 9-12.)

Linde did raise the constitutional arguments he asserts in his Petition in his memorandum in support of jurisdiction before the Supreme Court of Ohio.  (Doc. No. 5-25 at Ex. 25.)  But this does not cure his failure to fairly present the federal claim to the

Ohio appellate court. To fully exhaust his claim in the Ohio courts, he was required to give the courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  Linde did not meet this requirement because he fairly presented his federal claim only to the Ohio Supreme Court in an attempt to obtain discretionary review.  *See id.; Hruby v. Wilson*, 494 Fed. Appx 514, 517 (6th Cir. 2012) ("A habeas petitioner's submission of a new claim to the state's highest court on discretionary review is not a fair presentation to the state's courts." (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)).

Nevertheless, the Court will consider these claims on the merits.  *See* 28 U.S.C. § 2254(b)(2) (courts may deny unexhausted habeas petitions on the merits); *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (courts may skip complicated "procedural-bar issues" if the merits are "easily resolvable against the habeas petitioner").

### 2.    Petitioner's Fourth Ground for Relief

#### a.    Ineffective Assistance of Trial Counsel

In his fourth ground for relief, Linde claims that both his trial counsel and appellate counsel provided ineffective assistance.  In his Petition, Linde argues that his trial counsel "was ineffective as counsel failed to object to the fact that the Petitioner was sentenced contrary to law and rulings of the higher courts."  (Doc. No. 1 at 10.) Linde was more specific in his Traverse, asserting that trial counsel "was ineffective for allowing the [t]rial [c]ourt to sentence the Petitioner to allied offenses of similar import." (Doc. No. 8 at 14.)  The State argues that Linde's claim of ineffective assistance of trial counsel is procedurally defaulted, because it is based on the trial court record but he did

11

not present the claim on direct appeal.  (Doc. No. 5 at 7, 34.)

The Court agrees that Linde's trial counsel ineffective-assistance claim arises out of the record of proceedings in the trial court, because it is based on a failure to object at trial.  Linde therefore could have raised it on direct appeal.  He failed to do so, however, and, under Ohio law, *res judicata* now prohibits him from raising the issue in any post-conviction proceeding.  *See State v. Cole*, 2 Ohio St. 3d 112, 113 (Ohio 1982); *State v. Perry*, 10 Ohio St. 2d 175 (Ohio 1967) (holding that *res judicata* bars a criminal defendant from raising in post-conviction proceedings those claims that could have been raised on direct appeal). Thus, there are no longer any state-court remedies still available to Linde with respect to this claim, and this Court may deem the claim procedurally defaulted.  *See Gray v. Netherland*, 518 U.S. 152, 161–62 (1996) ("Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . ., it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ." (internal citations omitted)).

Because Linde procedurally defaulted this claim, this Court may review it only if he can demonstrate cause and prejudice for the default, *see Gray*, 518 U.S. at 162 ("the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground[1] for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default"), or that this Court's failure to review the merits of his claim will

_____

[1]  The Sixth Circuit has determined that "the application of *res judicata* is an adequate and independent state ground justifying foreclosure of constitutional claims in habeas."  *Mason v. Mitchell*, 320 F.3d 604, 628 (6th Cir. 2003).

12

result in a fundamental miscarriage of justice, *Coleman*, 501 U.S. at 750.  Linde does

not offer any argument regarding either the cause for, or prejudice resulting from, his

procedural default of this issue.  Nor does he contend that he is actually innocent such

that this Court should excuse his procedural default.

Linde's claim of ineffective assistance of trial counsel, therefore, is procedurally

defaulted.[2]

**b.    Ineffective Assistance of Appellate Counsel**

Linde identifies two grounds of ineffective assistance of his appellate counsel:

namely, that counsel "failed to include pertinent parts of the trial record on his direct

appeal," and that counsel "filed a brief devoid of any facts about the offenses."  (Doc.

No. 8 at 14.)  The State notes that Linde raised these appellate counsel ineffective-

assistance claims in his memorandum of jurisdiction to the Ohio Supreme Court.  (*See*

Doc. No. 5 at 7, 36.)

Linde did not, however, file a Rule 26(B) application asserting the claims.  These

claims, therefore, may be unexhausted and procedurally defaulted.  *See, e.g, Murray v.*

*Carrier*, 477 U.S. 478, 488-89 (1986).  "[R]aising a claim for ineffective assistance of

appellate counsel in a discretionary appeal to the Ohio Supreme Court, without

---

[2] To the extent Linde claims trial counsel was ineffective for failing to prevent
consecutive sentences, he misunderstands the role of trial counsel.  Trial counsel
cannot control decisions of the trial court.  The issue of consecutive sentences was
presented on appeal and considered by both the trial court and appellate court after
remand.  Linde, therefore, cannot demonstrate that he was prejudiced by his trial
counsel's performance.  *See Strickland v. Washington*, 466 U.S. 668, 694 (1984) (to
establish ineffective assistance of trial counsel, a petitioner must demonstrate "a
reasonable probability that, but for counsel's unprofessional error, the result of the
proceeding would have been different.").

13

addressing the claim through Ohio Appellate Rule 26(B), does not satisfy the

exhaustion requirement unless the Ohio Supreme Court addresses the issue on the

merits."  *Goldberg v. Maloney*, 692 F.3d 534, 538 (6th Cir. 2012).  The Ohio Supreme

Court has held that its denial of a motion seeking discretionary appeal raising a claim of

ineffective assistance of appellate counsel does not constitute an adjudication on the

merits of that claim.  *State v. Davis*, 119 Ohio St. 3d 422, 424 (Ohio 2008).

The Ohio Supreme Court, therefore, has not addressed Linde's appellate

counsel ineffective-assistance claims on the merits.  And Linde does not claim to have

filed a Rule 26(B) application, nor does he argue that he could do so now.[3]  The Court

need not determine whether Linde could file a delayed Rule 26(B) petition, however.  As

will be explained below, these claims are meritless.  *See* 28 U.S.C. § 2254(b)(2) (courts

may deny unexhausted habeas petitions on the merits); *Lambrix v. Singletary*, 520 U.S.

518, 525 (1997) (courts may skip complicated "procedural-bar issues" if the merits are

"easily resolvable against the habeas petitioner").

**C.    Cognizability**

The State argues that grounds two and three, relating to Linde's sentencing, are

matters of state law and therefore not cognizable on federal habeas corpus.  (Doc. No.

---

[3]  Linde theoretically still may assert these claims in a delayed application for reopening under Rule 26(B)(1) by satisfying the rule's good-cause exception to its ninety-day time requirement.  But that would be difficult, since he was aware of the arguments when he sought discretionary appeal.  *See Goldberg,* 692 F.3d at 538 n.3.  If Linde has no remaining remedies in state court, the claims are procedurally defaulted. *See Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) ("[I]f an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review.").

14

5 at 29-32.)  It points out that the state appellate court, the last state court to address these claims, considered only state law.  (*Id.* at 26, 31.)  The Court agrees, and extends this reasoning to Linde's first ground, regarding allied offenses, as well.

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241). *See also Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Engle v. Isaac,* 456 U.S. 107, 121 n.21 (1982) ("We have long recognized that a 'mere error of state law' is not a denial of due process." (citation omitted)).  Thus, challenges to a state court's interpretation and application of state sentencing laws generally are not cognizable in federal habeas corpus.  *See, e.g., Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000); *Kipen v. Renico*, 65 Fed. Appx. 958, 959 (6th Cir. 2003).  A federal habeas court only considers an alleged state court sentencing error if it violates a petitioner's federal constitutional right to due process or equal protection.  *Allsup v. Sheldon*, 2013 WL 3200641, at *18 (N.D. Ohio June 24, 2013).

In his first ground, Linde devotes most of his argument to an analysis of his offenses under Ohio's allied offense statute as interpreted by *State v. Johnson*, 128 Ohio St. 3d 153 (Ohio 2010).  Similarly, in his second and third grounds, he argues that "[t]he Court failed to make the statutory [*sic*] required findings on the record to support the imposition of more than the minimum and consecutive sentences."  (Doc. No. 8 at 8.)  These are errors of state law that are not cognizable on habeas review.

15

Accordingly, to the extent that Linde's first three grounds for relief assert errors of state law by the Ohio appellate court, those claims are not cognizable on federal habeas review.

### V.  The Merits of Petitioner's Remaining Claims

The Antiterrorism and Effective Death Penalty Act of 1996 ( "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *See Carey v. Musladin*, 549 U.S. 70 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *See Carey*, 549 U.S. at 74.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.

16

> Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at an opposite result.  *Id.* at 405-06.  A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  "In order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been objectively unreasonable."  *Id.* at 520-21 (internal citations and quotation marks omitted).  This Court applies this deferential standard of review to the state courts' ruling on Petitioner's first through third grounds for relief.

**A.**    **Petitioner's First Ground for Relief:** *Trial-Court Error / Double Jeopardy*

In Linde's first ground for relief, he claims that the trial court violated his right to be free from double jeopardy under the Fifth Amendment when it determined that the offenses of aggravated robbery and aggravated burglary were not allied offenses of similar import under Ohio law and therefore did not merge them for purposes of sentencing.  (Doc. No. 1 at 5.)  The State argues that this claim lacks merit.  (*See* Doc.

17

No. 5 at 26.)

The Double Jeopardy Clause guarantees that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  The Supreme Court has ruled that the Double Jeopardy Clause "protects against multiple punishments for the same offense."  *Brown v. Ohio*, 432 U.S. 161, 165 (1977) (internal quotation marks and citations omitted).  This multiple-punishments prohibition, however, protects defendants from being punished more than once for a single act only when the legislature does not intend for the punishments to be cumulative.  *See, e.g., Volpe v. Trim*, 708 F.3d 688, 696 (6th Cir. 2013) (citing *Albernaz v. United States*, 450 U.S. 333, 334 (1981)).  "When two different statutory provisions authorize punishment for the same act, '[t]he first step is to determine whether [the legislature] intended to punish cumulatively the same conduct which violates two statutes.'"  *Id.* (quoting *United States v. Johnson*, 22 F.3d 106, 107-08 (6th Cir. 1994)).

The Sixth Circuit further has explained:

In *Blockburger v. United States*, 284 U.S. 299 [(1932)], the Supreme Court developed the "same elements" test to determine whether Congress has authorized cumulative punishments: "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* at 304 . . . .  The *Blockburger* test, however, is a "rule of statutory construction,"  . . .  "not a constitutional test in and of itself," . . . .  As a result, the *Blockburger* test "does not necessarily control the inquiry into the intent of a state legislature. Even if the crimes are the same under *Blockburger*, if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end." *[Ohio v.] Johnson*, 467 U.S. [493,] 499 n. 8 [(1984)] . . . .

*Volpe*, 708 F.3d at 696-97 (internal citations omitted).

Therefore, "[i]n contrast to most habeas claims, which are based entirely on

18

federal constitutional rights, a claim under the Double Jeopardy Clause requires analysis of state law; because the state legislature has the authority to define and punish crimes, the definition of multiple punishments is dependent on the legislative intent of the state government." *Person v. Sheets*, 527 Fed. Appx. 419,  423 (6th Cir. 2013) (citing *Volpe*, 708 F.3d at 697).  "Moreover, '[w]hen assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes.'" *Volpe*, 708 F.3d at 697 (quoting *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989)). "Thus, for purposes of double jeopardy analysis, once a state court has determined that the state legislature intended cumulative punishments, a federal court must defer to that determination." *Id.* (citing *Banner*, 886 F.2d at 780).  In Ohio, to determine whether the legislature intended to authorize cumulative punishments, courts apply Ohio Rev. Code § 2941.25 (Ohio's multiple counts statute).[4]  *Volpe*, 708 F.3d at 697.      As noted above, Linde raised a claim regarding the trial court's failure to consider the applicability

---

[4]  That statute provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import ... the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

Ohio Rev. Code § 2941.25. Thus, two or more offenses arising from the same conduct and similar import only may result in one conviction.  Ohio Rev. Code § 2941.25(A). Two or more offenses may result in multiple convictions, however, if: (1) they are offenses of dissimilar import; (2) they are separately committed; or (3) the defendant possesses a separate animus as to each.  Ohio Rev. Code § 2941.25(B).

19

of Ohio's allied offenses statute in his sentencing on his first direct appeal.  The state appellate court agreed with Linde and reversed his convictions, because the trial court had not applied *State v. Johnson*, 128 Ohio St. 3d 153 (Ohio 2010), to determine whether Linde's convictions were allied offenses of similar import.  *Linde*, 2012 WL 2410955, at *1.  In *Johnson*, the Ohio Supreme Court outlined a new test for determining whether offenses were allied and subject to merger.  *Id.* at syllabus.  On remand, the trial court conducted a hearing and determined that Linde's convictions should not merge under *Johnson.*  (Doc. No. 5-9 at Ex. 9; Doc. No. 5-16 at Ex. 16.)  The court then ordered a pre-sentence investigation report ("PSI") and set the matter for a sentencing hearing.  The court again sentenced Linde to a total of fifteen years in prison, including consecutive sentences of eight years for aggravated robbery and seven years for aggravated burglary.  (Doc. No. 5-10 at Ex. 10; Doc. No. 5-17 at Ex. 17.)

The state appellate court was the last state court to consider Linde's allied offenses claim.  After considering Ohio's allied offenses statute, the governing Ohio Supreme Court precedent, *Johnson*, and the elements of the offenses, the court concluded:

> {¶ 19} The record supports the conclusion that Linde's aggravated burglary offense was complete when he broke into Nemeth's house with a knife for the purpose of taking money from the house. See R.C. 2911.11(A)(2). It further supports the conclusion that he then later committed aggravated robbery when Nemeth emerged from his hiding place and Linde attacked him, thereby causing him serious physical harm. See R.C. 2911.01(A)(3). Based on our review of the record, the two offenses were separately committed. . . .  They also were committed with a separate animus, as Linde broke into Nemeth's seemingly empty home strictly for the purpose of stealing money and only later attacked him after discovering that Nemeth was, in fact, at home. . . .  Therefore, the trial court did not err by sentencing Linde on both his aggravated robbery and aggravated burglary counts. Linde's first assignment of error is overruled.

20

*Linde*, 2013 WL 4107888, at *2 (internal citations omitted).

Although Linde couches his claim only in Ohio law, the Court construes his argument to assert that the state appellate court decision misapplied Ohio's allied offenses law in affirming the trial court's sentencing, and thereby unreasonably applied Supreme Court double jeopardy precedent.  Nonetheless, Linde essentially repeats here the arguments he made to the state appellate court.  He maintains that the offenses at issue were committed as part of a "continuous act" and with a "single state of mind. " (Doc. No. 8 at 6.)  The aggravated robbery, he argues, was "merely incidental to the underlying charge of aggravated burglary[.]"  (*Id.*)  Linde does not show that the court applied Ohio allied offenses law in a manner inconsistent with the state legislature's intent.  Nor does he even attempt to demonstrate that the state court's determination of facts supporting its analysis was clearly erroneous.  *See* 28 U.S.C. § 2254(e)(1) (state court factual findings presumed correct unless rebutted by clear and convincing evidence).  To the contrary, Ohio law and the record clearly support the state court's conclusion that the aggravated burglary and aggravated robbery offenses were committed separately, one leading to the other; and with different intent, one involving theft, the other involving an assault.  The state court's decision is not arbitrary or unreasonable, and this court must defer to that ruling.  *See McKitrick v. Smith*, 2009 WL 1067321, at **14-16 (N.D. Ohio Apr. 21, 2009).

For the foregoing reasons, the state appellate court's decision upholding Linde's cumulative sentences was neither contrary to, nor an unreasonable application of, Supreme Court precedent, and did not include unreasonable determinations of fact in

light of the evidence presented.

**B.      Petitioner's Second and Third Grounds for Relief**: *Trial-Court Error / Jury Trial Rights in Sentencing*

In his third and fourth grounds for relief, Linde contends that the trial court violated his Sixth Amendment rights by failing to conduct a jury trial on the sentencing factors as required by *Blakely v. Washington*, 542 U.S. 296 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  (Doc. No. 8 at 8.)  The Supreme Court established in those cases that "it is within the jury's province to determine any fact (other than the existence of a prior conviction) *that increases the maximum punishment* authorized for a particular offense."  *Oregon v. Ice*, 555 U.S. 160, 163 (2009) (emphasis added).  As noted above, the state appellate court considered only state law in addressing Linde's claims regarding his non-minimum and consecutive sentences.  *See Linde*, 2013 WL 4107888, at **5-6.  It is clear, however, that *Apprendi* and its progeny do not apply to either of these claims.

The *Apprendi* line of cases does not apply to Linde's claim regarding his non-minimum sentences, because the trial court did not "increase[] the maximum punishment authorized for" Linde's offenses.  *Ice*, 555 U.S. at 163.  It imposed a sentence within the range of permissible sentences under Ohio sentencing laws, greater than the minimum sentence permitted, but *less than the maximum*.

Additionally, Linde's claim regarding his consecutive sentences is foreclosed by the Supreme Court's decision in *Oregon v. Ice*.  In that case, the Court expressly declined to extend the *Apprendi* and *Blakely* line of decisions to the imposition of consecutive sentences.  *Ice*, 555 U.S. at 163.  It held that, in light of states' historical

22

authority over the administration of their criminal justice systems, the Sixth Amendment does not inhibit states from assigning to judges, rather an juries, the finding of facts necessary to impose consecutive, rather than concurrent, sentences for multiple offenses.  *Id.*  The Supreme Court explained:

> Most States continue the common-law tradition: They entrust to judges' unfettered discretion the decision whether sentences for discrete offenses shall be served consecutively or concurrently. In some States, sentences for multiple offenses are presumed to run consecutively, but sentencing judges may order concurrent sentences upon finding cause therefor.

*Id.* at 163–64.  Because the Oregon sentencing statute at issue did not "ero[de] . . . the jury's traditional role," the Court concluded, they were not unconstitutional under the Court's rulings in the *Apprendi* cases.  *Id.* at 171-72.

Moreover, the Ohio statute under which Linde was sentenced, Ohio Rev. Code § 2929.14(C)(4), was drafted in response to, and in compliance with, *Ice*.  After *Apprendi* and *Blakely* were decided, the Ohio Supreme Court applied the reasoning of those cases in *State v. Foster*, 109 Ohio St. 3d 1, 25 (Ohio 2006), concluding that certain sections and provisions of Ohio's sentencing scheme were unconstitutional.  It severed the unconstitutional provisions from the statutory scheme.  Among these provisions were former Ohio Rev. Code §§ 2929.14(E) and 2929.41(A), which, together, created a presumption in favor of concurrent terms and required a trial court to make certain factual findings prior to imposing consecutive sentences.  *Id.*  After *Ice* was decided, the Ohio Supreme Court rejected a defendant's claim that *Ice* "reinstated or revived" the severed provisions.  *State v. Hodge*, 128 Ohio St. 3d 1, 2 (Ohio 2010).  The court concluded that "[b]ecause the statutory provisions are not revived, trial court judges are not obligated to engage in judicial fact-finding prior to imposing consecutive sentences

23

unless the General Assembly enacts new legislation requiring that findings be made." *Id.* at 10-11. The General Assembly did just that. It amended former § 2929.14(E) in September 2011, enacting new language in § 2929.14(C)(4) requiring judicial fact-finding for consecutive sentences. *See State v. Calliens*, No. 97034, 2012 WL 589527, at *5 (Ohio App. Ct. Feb. 23, 2012). The trial court applied the new § 2929.14(C)(4) in Linde's sentencing in October 2011.

As neither state nor federal law requires fact-finding by a jury before the imposition of consecutive or non-minimum sentences, the state appellate court's decision affirming the trial court's imposition of non-minimum and consecutive sentences was neither contrary to, nor an unreasonable application of, *Apprendi* and the line of cases following it.

**C.    Petitioner's Fourth Ground for Relief: *Ineffective Assistance of Appellate Counsel***

In his fourth ground for relief, Linde claims that his appellate counsel provided ineffective assistance. In his Petition, he argues that his appellate counsel "failed to properly prosecute [his] direct appeals in accordance with court rules and appellate procedures." (Doc. No. 1 at 10.) In his Traverse, he more specifically claims that appellate counsel "failed to include pertinent parts of the trial record on his direct appeal," and filed a brief "devoid of any facts about the offenses." (Doc. No. 8 at 14.) The State contends that neither of these claims have merit. (Doc. No. 5 at 38-41.) Because the claims were not adjudicated by state courts, as explained above, the Court reviews them *de novo*. *See, e,g, Hill v. Mitchell*, 400 F.3d 308, 313 (6th Cir. 2005).

The Supreme Court has held that a defendant is entitled to effective assistance of

counsel in his first appeal as a matter of right.  *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  The two-part test enunciated in *Strickland* is applicable to claims of ineffective assistance of appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  Thus, Linde must demonstrate that appellate counsel's performance was deficient, and that the deficient performance so prejudiced the appeal that the appellate proceedings were unfair and the result unreliable.  *Strickland,* 466 U.S. at 687.

An appellant has no constitutional right, however, to have every non-frivolous issue raised on appeal, *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983), and tactical choices regarding issues to raise on appeal are properly left to the sound professional judgment of counsel, *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  "[O]nly when issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome."  *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003) (internal quotation marks and citations omitted).  The Court has observed that the standards imposed by *Strickland* and § 2254(d) are both "highly deferential," so that in applying them together, "review is 'doubly' so."  *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

Linde does not clearly identify the parts of the record which he contends counsel failed to submit to the appellate court.   The state court noted that the PSI was missing from the record and explained that "[i]n the absence of a complete record, [it] ha[d] no choice but to presume regularity."  *Linde*, 2013 WL 4107888, at **5-6.  The appellate court also noted that Linde's brief was "devoid of any facts about the offenses," making it "impossible to evaluate whether the trial court erred . . . ."  *Linde*, 2013 WL 4107888, at **1-2.  It observed,

> Although the brief concludes that Linde's intent "was to commit a robbery, with the burglary being merely incidental to the robbery[,]" the brief presents no facts to support this conclusion. The reader is at a complete loss to understand anything about the facts or circumstances of the offenses. This is particularly problematic when the facts are precisely what this Court must consider when reviewing the trial court's decision.

*Id.* Nevertheless, as the State points out, the state court proceeded to consider Linde's claims "[n]otwithstanding the problems with the brief [it] highlighted . . . ." *Id.* at *2. Linde therefore cannot show that the result of his appeal would have been different had his appellate counsel submitted a more comprehensive appellate brief with the proper exhibits. *See Strickland*, 466 U.S. at 687 (if a petitioner fails to prove either deficiency or prejudice, his ineffective-assistance claim will fail).

Linde also states in his Traverse that appellate counsel failed to raise the issue of typographical errors in Linde's indictment. (Doc. No. 8 at 14.) The state appellate court concluded, however, that because the error was "clerical in nature," it "merely note[d] it . . . for purposes of clarification." *Linde*, 2013 WL 4107888, at **3, n.2. As the errors in the indictment were just clerical and did not affect Linde in any way, much less prejudice him, his appellate counsel's failure to raise this issue was neither deficient nor prejudicial.

Accordingly, Linde's claims of ineffective assistance of appellate counsel are meritless.

## VI. Conclusion.

For the reasons given above, the petition should be dismissed with prejudice.


Date: March 4, 2016                          */s/ Nancy A. Vecchiarelli*
                                             United States Magistrate Judge

## **OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**